UNITED STATES *v.* LEM HOY.

No. 585. Argued March 14, 1947.—Decided April 7, 1947.

*Peyton Ford* argued the cause for the United States. With him on the brief were *Acting Solicitor General Washington, Robert S. Erdahl* and *Sheldon E. Bernstein.*

*Henry G. Bodkin* submitted on brief for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

A United States Attorney filed an information in a Federal District Court charging that the appellee, Lem Hoy, "did attempt to induce, assist, encourage, and solicit,

certain alien persons to migrate to the United States as
contract laborers . . . who were not alien contract labor-
ers duly entitled to migrate to the United States under the
Act of February 5, 1917, or to enter or migrate to the
United States under any other law of the United States,
as the defendant then and there well knew." The conduct
charged was made an offense by § 5 of the 1917 Immigra-
tion Act referred to in the information. 39 Stat. 874,
879, 8 U. S. C. § 139. Hoy appeared, waived indictment,
asked for a bill of particulars, and moved to dismiss the
information on the ground that § 5 of the 1917 Act had
been repealed by § 5 (g) of the Farm Labor Supply Ap-
propriation Act of 1944. 58 Stat. 11, 15–16, 50 U. S. C.
App., Supp. V, § 1355 (g). The bill of particulars showed
that Hoy had written a letter to certain persons living in
Mexico to induce them to come to the United States to
work for him. In the letter Hoy told them that "it makes
no difference if you pass as contraband (smuggle in), as
wherever the Immigration catches you I will get you out
with a bond." The letter also directed the aliens to see
a man near the border who would "bring" them to Hoy for
$25, and stated that Hoy would "arrange everything."
It was stipulated that Hoy wanted the men to work for
him as agricultural laborers.

Holding that the 1944 Farm Labor Act had made the
1917 Act inapplicable to such farm laborers, and there-
fore to those who induced their entry, the District Court
dismissed the information. Since this dismissal was based
on the construction of the 1917 Act as the Government
sought to apply it in the information, the case is properly
here on direct appeal from the District Court. 18 U. S. C.
Supp. V § 682, 28 U. S. C. § 345.

The 1944 Farm Labor Act, by its terms, was designed
to facilitate the wartime employment, and therefore the
immigration into the United States for a limited stay, of

agricultural laborers from North, South, and Central America, and islands adjacent thereto. In determining whether this information was properly dismissed, it is appropriate for us to consider whether Congress intended in the 1944 Act to remove all restrictions, enforceable by sanctions, against immigration into the United States of such agricultural laborers from the western hemisphere; and at the same time whether it intended to repeal, not only the provision which prohibited contract laborers from entering the country, but also the long-standing law which made it a criminal offense to induce such persons, barred by law, to enter.[1] If the 1944 Act has these effects, it marks a complete reversal of the congressional policy which has been followed for more than half a century.[2]

In line with this policy, the purpose of the 1917 Act, according to its title, was "To regulate the immigration of aliens to, and the residence of aliens in, the United States." It provided detailed qualifications for persons to be admitted to the country. Certain persons were to be completely barred, such as idiots, epileptics, chronic alcoholics, vagrants, criminals, polygamists, prostitutes, persons afflicted with loathsome or dangerous contagious diseases, persons who advise, advocate, or teach opposition to organized government or its overthrow by force, illit-

---

[1] Compare 39 Stat. 894, 8 U. S. C. § 163 (crime to aid or assist any person to enter who believes in violent overthrow of government); 39 Stat. 880, 43 Stat. 166, 8 U. S. C. § 145 (crime to bring to the United States an alien with certain diseases); 45 Stat. 1551, 8 U. S. C. § 180a (crime for alien to enter at any place other than at an immigration point, or to elude examination). See also 35 Stat. 1152, 18 U. S. C. § 550 which provides that "Whoever directly commits . . . an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

[2] See 23 Stat. 332; 32 Stat. 1213; 34 Stat. 898; 41 Stat. 1008; *Holy Trinity Church* v. *United States,* 143 U. S. 457, 463–465.

erates, and contract laborers, defined as persons induced or encouraged to come to this country by offers or promises of employment. The 1917 Act further provided for deportation of improperly admitted aliens, and authorized the promulgation of regulations to enforce the various provisions looking to exclusion of all persons except those qualified to enter the United States under the prescribed statutory standards. Pursuant to the broad terms of the 1917 and other supplementary Acts, a bureau of immigration and naturalization, now a part of the Department of Justice, has been established to examine the qualifications of those seeking admission and otherwise to enforce and administer the immigration laws in the interior and at the borders.[3]

The 1944 Farm Labor Act does not on its face purport to relax the standards of the 1917 and other Acts, except in a very limited way. It does not abolish the screening, administrative and enforcement function of the immigration authorities. Indeed the sponsor of the bill on the Senate floor explained that the measure proposed made certain, by provision for strict control of immigration and immigrants, that the stay of workers admitted pursuant to its provisions would be wholly temporary, and that "we" who sponsored the bill "are not in any way interfering with the firmly established national immigration policy."[4]

Section 5 (g) of the 1944 Act, relied on as wholly excepting agricultural laborers from the restrictions of the 1917 Act, is set out below.[5] It will be noted that this section

---

[3] 22 Stat. 214, 24 Stat. 415, 26 Stat. 1085, 28 Stat. 780, 32 Stat. 825, 828, 37 Stat. 736, 737, 54 Stat. 1238, 8 U. S. C. §§ 100–103.

[4] 90 Cong. Rec. 864 (1944).

[5] "In order to facilitate the employment by agricultural employers in the United States of native-born residents of North America, South America, and Central America, and the islands adjacent thereto, desir-

728

does permit entrance of agricultural workers who, but for this Act, would not be admitted under the former law. The only exceptions from the long list of non-admissibles under the 1917 and other Acts are these: illiterates and those who have been induced to come into the country by

ing to perform agricultural labor in the United States, during continuation of hostilities in the present war, any such resident desiring to enter the United States for that purpose shall be exempt from the payment of head tax required by section 2 of the Immigration Act of February 5, 1917, and from other admission charges, and shall be exempt from those excluding provisions of section 3 of such Act which relate to contract laborers, the requirements of literacy, and the payment of passage by corporations, foreign government, or others; and any such resident shall be admitted to perform agricultural labor in the United States for such time and under such conditions (but not including the exaction of bond to insure ultimate departure from the United States) as may be required by regulations prescribed by the Commissioner of Immigration and Naturalization with the approval of the Attorney General; and in the event such regulations require documentary evidence of the country of birth of any such resident which he is unable to furnish, such requirement may be waived by the admitting officer of the United States at the point where such resident seeks entry into the United States if such official has other proof satisfactory to him that such resident is a native of the country claimed as his birthplace. Each such resident shall be provided with an identification card (with his photograph and fingerprints) to be prescribed under such regulations which shall be in lieu of all other documentary requirements, including the registration at time of entry or after entry required by the Alien Registration Act of 1940. Any such resident admitted under the foregoing provisions who fails to maintain the status for which he was admitted or to depart from the United States in accordance with the terms of his admission shall be taken into custody under a warrant issued by the Attorney General at any time after entry and deported in accordance with section 20 of the Immigration Act of February 5, 1917. Sections 5 and 6 of such Act shall not apply to the importation of aliens under this title. No provision of this title shall authorize the admission into the United States of any enemy alien." § 5 (g) Farm Labor Supply Appropriation Act, 1944, 58 Stat. 11, 15–16, 50 U. S. C. App. Supp. V, 1355 (g).

promises of employment, or whose passage has been paid by corporations or other persons. By specifically lifting the immigration barriers in these respects, Congress left the barriers in effect which barred physical and mental defectives, those with certain diseases, etc. And even the exceptions granted were not unconditional, for under the 1944 Act agricultural laborers could still be admitted only "for such time and under such conditions . . . as may be required by regulations prescribed by the Commissioner of Immigration and Naturalization with the approval of the Attorney General . . . ."

In pursuance of their authority under this Act, the immigration authorities have promulgated regulations which provide in detail for the admission of agricultural laborers who are "in all respects admissible under the provisions of the immigration laws except" as to the particular limited provisions of the 1917 Act designated in the 1944 Act. 8 C. F. R. Cum. Supp. § 115.2 (c). And as shown by the Senate and House reports and hearings on the 1944 Act, a vast program was to be carried out to permit agricultural laborers to enter and to remain in the United States, but only for a limited time and under such conditions as conform with the immigration laws and regulations, and in accordance, so far as this case is concerned, with agreements made with the Government of Mexico.[6] Far from abolishing the responsibilities of the immigration authorities in examining and approving these persons at the border and supervising their stay, the 1944 Act, the treaty and the regulations, although changing those responsibilities in some respects, have actually increased them. Aliens must still make a lawful entry at the places designated for their examination, screening, and registration. Those

---

[6] See H. Rep. No. 246, 78th Cong., 1st Sess., 3, 4, 6 (1943); H. Rep. No. 358, 78th Cong., 1st Sess., 8 (1943); Sen. Rep. No. 157, 78th Cong., 1st Sess., 3, 4 (1943).

who do not meet the statutory standards of the 1917 Act, with the minor exceptions made in the 1944 Act, must be turned back. And those who are permitted to enter remain subject to supervision, control, and early deportation by immigration authorities.[7]

This brings us to the contention that Hoy cannot be prosecuted under § 5 of the 1917 Act because the 1944 Act provides that § 5 "shall not apply to the importation of aliens under this title." But Hoy was not charged with inducing or encouraging the Mexican aliens whom he wrote to come in "under this title."[8] He was allegedly inviting them to enter the country in disregard and defiance of "this title" and all other law. Thus he was specifically charged with inducing aliens to come into this country who were not entitled to enter under the 1917 Act or "under any other law of the United States, as . . . [he] then and there well knew." If this charge, as clarified by the bill of particulars, is true, he was urging aliens to come into this country without passing through the immigration stations, without regard to the length of their stay, or whether they were barred by reason of disease, physical weakness, or any of the other disqualifications set out in the 1917 and other laws or regulations.

The 1944 Act was intended to permit alien agricultural workers to enter the country for a limited time under Government rules and regulations after proper proofs to Government officials that the aliens were so qualified. It

---

[7] For example, under the treaty with Mexico governing wartime immigration of these farm laborers our Government has the right to determine where in the United States workers are needed most and to send them there. Other provisions of the treaty require that 10% of each worker's wages be earmarked and returned for deposit in Mexico, and that their living and working conditions meet specified standards. These provisions require close supervision of the admitted aliens by immigration authorities. 56 Stat. 1759–1768; 57 Stat. 1152–1163.

[8] The phrase "this title" refers only to the "Farm Labor Supply Appropriation Act, 1944," § 5 (1), 58 Stat. 11, 17.

is true that the law was intended to fill the need for agricultural workers by removing the 1917 prohibition against would-be employers' inviting and inducing foreign workers to come to the United States. But we are not persuaded that the law, which provided specific limitations and requisites to entry under it, can properly be interpreted to authorize would-be employers to invite, induce and offer rewards to aliens to circumvent immigration processing and to enter the United States in disregard and defiance of law. The 1917 prohibition against employers inducing laborers to enter the country, enforceable by sanctions, removed obstacles which might hinder immigration authorities in the performance of their duties; we do not think the 1944 Act was intended to license employers to obstruct their performance. The information charged an offense and it should not have been dismissed.

*Reversed.*